A90A0413. ANNEEWAKEE, INC. v. HALL.
(396 SE2d 9)

BANKE, Presiding Judge.

The appellee, Barbara Hall, acting individually and as administratrix of the estate of her late husband, J. D. Hall, brought this action against the appellant, Anneewakee, Inc., seeking to recover damages for its alleged negligence in failing to foresee and prevent the fatal shooting of Mr. Hall by one Billy Ray White. The case was tried before a jury, which awarded the appellee $506,000 in actual damages and $500,000 in punitive damages. However, the trial court reduced this award by $200,000 to reflect the plaintiff's receipt of a settlement in that amount on a claim against the State of Florida arising from the same incident. This appeal followed.

At all times relevant to this case, Anneewakee, Inc., operated an in-patient juvenile psychiatric facility in Douglas County, Georgia. In early 1985, Agnes Tucker, a juvenile counselor with the Florida Department of Health and Rehabilitative Services (DHRS), submitted an application for admission to Anneewakee on behalf of Billy Ray White, a 13-year-old Florida youth. Ms. Tucker thereafter scheduled an appointment to bring White to the Anneewakee facility on March 27, 1985, for testing and evaluation to determine his suitability for the Anneewakee program, it being understood that in no event would he be admitted to the facility on that date.

Ms. Tucker and White flew to Atlanta from Jacksonville, Florida, on the morning of March 27th with reservations to return to Jacksonville that evening. They immediately proceeded in a rented car to the Anneewakee facility in Douglas County, where White underwent interviews and tests until approximately 3:30 p.m. At that time, they got back into the rental car and set out on what was to be the return trip to the airport. Although White had been cooperative during the tests and interviews, he opened the car door and fled into the woods as Ms. Tucker was about to turn onto the main road from the Anneewakee driveway. After attempting without success to find him in the immediate vicinity, Ms. Tucker drove back to the Anneewakee facility to report his escape. A social worker employed by Anneewakee immediately telephoned the office of the Douglas County Sheriff, reported what had happened, and provided a physical description of the boy.

Later that afternoon, a deputy sheriff arrived at Anneewakee and interviewed Ms. Tucker about the incident. She stated during this interview that White was emotionally disturbed and without money, that he would not hesitate to break into a home in search of food and that care should be used in approaching him. Later that day, Ms. Tucker drove to the sheriff's office of her own initiative, reiterated that White was emotionally disturbed and suggested that tracking dogs be utilized to locate him. She was advised at this time that no tracking dogs were available and that due to personnel limitations, it was possible that no search at all would be conducted for him that night. Ms. Tucker then returned to the area where White had escaped, reported the situation to the operators of a nearby convenience store and advised them to call the sheriff's department if they obtained any information about the youth. She returned to Florida later that night but telephoned the sheriff's department the following day to inquire about the status of the investigation. She testified that no one seemed to know about White's escape at this time, so she again reported what had happened, emphasizing that the boy was emotionally disturbed and suicidal and that he had perpetrated a series of burglaries in the State of Florida.

That same day, i.e., March 28, the sheriff's department received a report that some clothing had been stolen from a car on the Anneewakee grounds and that the "juvenile that ran away from [Anneewakee] 3-27-85 [had] possibly perpetrated the incident." The department also received a report that day that a truck had been stolen from the decedent's property. White remained at large for a total of three nights. On the morning of March 30, 1985, he shot and killed the decedent while attempting to steal another truck from his property. *Held*:

1. Anneewakee contends that it was entitled to a directed verdict

due to the absence of a causal relationship between its conduct and the decedent's death. We agree.

"To state a cause of action for negligence in Georgia, the following elements are essential: '(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.' [Cit.]" *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). "On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Prosser and Keaton on Torts (5th ed. 1984), § 41, p. 269.

The appellee's claim against Anneewakee was based on allegations that it knew or should have known of White's homicidal tendencies yet failed to impart that knowledge to law enforcement authorities. The basis for this asserted knowledge on Anneewakee's part was a statement appearing in a psychological evaluation which it had received from the Florida DHRS to the effect that White's "antisocial attitudes and underlying rage [were] so severe that [he] would [be] regard[ed] as a distinct homicidal threat in the future." However, given the affirmative steps taken by Ms. Tucker to impress upon the sheriff's department the seriousness of the situation and given the lack of response elicited by her actions in this regard, we do not believe there is any reasonable basis for an inference that the department would have intensified its search efforts significantly had it known that there was a Florida psychologist who held the opinion that the youth should be regarded as potentially homicidal. Although the Douglas County Sheriff testified that his department would have made greater efforts to locate White and "would have caught that kid" had this information been brought to its attention, such testimony must be considered entirely conclusory and self-serving under the circumstances. If Ms. Tucker's insistent warnings to the department regarding White's emotional problems and history of criminal behavior were insufficient to convey the message that he was potentially dangerous, it is only through the sheerest of speculation that it could be concluded that a copy of the Florida psychological evaluation would have succeeded where she had failed. Consequently, being

unable to discern any evidentiary basis for an inference that the decedent's death would have been avoided but for the sheriff's department's ignorance of the contents of this document, we hold that the trial court erred in denying Anneewakee's motion for a directed verdict.

2. The appellant's remaining enumerations of error are rendered moot by the foregoing.

*Judgment reversed. Birdsong and Cooper, JJ., concur.*

DECIDED JUNE 20, 1990 —
REHEARING DENIED JULY 13, 1990 — CERT. APPLIED FOR.

*Long, Weinberg, Ansley & Wheeler, Joseph W. Watkins, Lance D. Lourie,* for appellant.

*Howe & Dettmering, Donald B. Howe, Jr., W. O'Neal Dettmering, Jr.,* for appellee.